Lelan L. NEWBERRY *v.* FIREMAN'S FUND
INSURANCE COMPANY of San Francisco,
California; J. I. CASE Company; J. I. CASE
CREDIT Corporation, and Curtis CRUSE d/b/a
CURTIS CRUSE COMPANY

5-6031                                    485 S.W. 2d 731

Opinion delivered October 23, 1972

*Rhine & Rhine,* for appellant.

*Teague, Bramhall, Davis & Plegge,* for appellees.

J. Fred Jones, Justice. This is an appeal by Lelan L.
Newberry from a decree of the Greene County Chancery
Court wherein Newberry's complaint against Fireman's
Fund Insurance Company, J. I. Case Company, J. I.
Case Credit Corporation and Curtis Cruse d/b/a Curtis
Cruse Company was dismissed and judgment was ren-
dered in favor of J. I. Case Credit Corporation against
Newberry in the amount of $1,545.23, together with
costs and $150 attorney's fee.

On his appeal to this court Mr. Newberry relies on the following points for reversal:

"The lower court erred in not finding appellee insurance company was negligent and violated its insurance contract by waiting more than 60 days to negotiate an adjustment of this loss and failing to make any adjustment with this appellant and permitting this tractor (the insured property) to be sold after this suit was started.

The lower court erred in not finding that the J. I. Case Credit Corporation caused a violation of the sale contract and breached its contract with Mr. Newberry by selling the tractor before the insurance adjustment was made and after this suit was filed, thereby causing a rescission of the sale contract."

The facts as we gather them from the record are as follows: On or about November 20, 1969, Mr. Newberry purchased a new Case tractor from the local Case tractor dealer, Curtis Cruse d/b/a Curtis Cruse Company, for a total sale price of $7,665. Mr. Newberry traded in his old tractor for a credit of $2,000 on the purchase price of the new tractor and executed his note for the balance of the purchase price in the amount of $5,665. This amount was to be paid in equal annual installments of $1,819.98 payable on December 1, 1970, and on December 1 each year through 1973. Under the installment contract Mr. Newberry agreed to furnish physical damage insurance on the tractor, and by his contract he authorized the seller to obtain the insurance at a cost of $123.97 to be added to the note. This insurance was obtained through a policy issued by Fireman's Fund Insurance Company of San Francisco, with J. I. Case Company, J. I. Case Credit Corporation, Curtis Cruse d/b/a Curtis Cruse Company, as well as the purchaser Lelan L. Newberry, being the named beneficiaries under the terms of the policy as their interest should appear. Mr. Newberry took delivery of the tractor and used it in his farming operations until on or about October 31, 1970, when the

tractor was damaged by fire. On November 2, 1970, Mr. Newberry notified Curtis Cruse of the loss and requested that the insurance company be notified and the loss adjusted. Mr. Newberry claimed that the tractor was a total loss because of the fire and that was his contention at all times.

On or about December 11, 1970, upon request of an insurance adjuster for Fireman's Fund, the Case tractor dealer, Curtis Cruse, picked the tractor up and removed it to the company's place of business in Paragould, Arkansas. While the tractor was in the possession of Curtis Cruse Company and before any adjustment was made on the insurance loss, the December, 1970, installment became due on the purchase price of the tractor and in January, 1971, Mr. Newberry received notice from the J. I. Case Credit Corporation that the payment was past due. On January 20, 1971, Mr. Newberry, through his attorney, advised the J. I. Case Credit Corporation by letter that the tractor was destroyed by fire and that the Case dealer, Mr. Curtis Cruse, had picked up the remains of the tractor; that the insurance adjuster had advised Mr. Newberry that he would be contacted by the J. I. Case Company and the insurance company, and that a settlement of the loss would be made. The letter then advised that no further information had been received by Mr. Newberry and that he was in need of a new tractor but was waiting settlement of the insurance.

Apparently some negotiations were carried on, or at least some discussion was had, between the General Adjustment Bureau representing the insurance company and Mr. Newberry pertaining to the repair of the tractor in settlement of the claim under the insurance policy, because on February 11, 1971, Mr. Newberry's attorneys wrote a letter to Mr. Felts of the General Adjustment Bureau which stated in part as follows:

"Mr. Newberry does not want to accept this tractor after it has been repaired for the reason it will not carry a guarantee and he feels that the fire did permanent damage to the tractor."

The tractor was repaired at a total cost of $1,991.10.

By letter dated February 14, 1971, from J. I. Case Credit Corporation to Mr. Newberry, a previous meeting between the parties was mentioned and the letter then stated in part as follows:

"We will extend the account until 2-18-71, and at that time you are to give us a decision as to paying the payment, plus interest, and signing the insurance check covering the repairs to the tractor, which is now stored at Mr. Cruse's place of business.

This letter will further confirm that, if you do not wish to pay the payment and sign the check, we will have to take the necessary action we deem proper in protecting our security after February 18th."

Under date of February 18, 1971, Mr. Newberry, through his attorneys, responded to the J. I. Case Credit Corporation's letter of February 15 in part as follows:

"We feel you should insist on an insurance adjustment in this matter before any suit is brought against Mr. Newberry; however, if you do file suit in this matter, we will bring the insurance company into the suit and will file a counterclaim against the Case Tractor Company and the insurance company for damages caused by the taking of this tractor and the delay in making a proper adjustment in this matter.

We have asked the insurance company to confer with us about an adjustment. This they have not done. It is very possible that a lawsuit will be the only way this case can be settled, and we prefer that you start it."

The J. I. Case Credit Corporation did proceed to enforce its security agreement by sale of the tractor at public sale on June 11, 1971. The net proceeds from the sale

amounted to $5,050 which amount was credited to Mr. Newberry's account leaving a balance of $1,545.23 he still owed on the purchase price of the tractor.

On June 9, 1971, two days before the sale as above set out, Mr. Newberry filed the present suit against Fireman's Fund American Insurance Companies, J. I. Case Company, J. I. Case Credit Corporation and Curtis Cruse d/b/a Curtis Cruse Company praying judgment against the insurance company for $1,600 representing loss of equity in the tractor which was destroyed by fire and insured by the defendant insurance company, and for judgment against all the defendants in the amount of $5,000 as damages for delay and failure to adjust the insurance loss. The defendants filed demurrers to the complaint in equity and by amendment Mr. Newberry sought cancellation of his contract of purchase. Trial on the merits resulted in a decree awarding judgment in favor of J. I. Case Credit Corporation against Mr. Newberry for the balance of the purchase price due on the tractor in the amount of $1,545.23, together with interest from June 11, 1971, $150 attorney's fee and court costs.

We are of the opinion that this case actually turns on factual issues as to contractual rights under the unambiguous provisions of the insurance policy, and actually comes down to a question of the respective rights of the insurance company and Mr. Newberry under the terms and provisions of the insurance contract.

As already stated, the insurance policy insured the interest of:

"J. I. Case Company and/or its Subsidiaries and/or its Dealer(s) and/or their Successor(s) and/or Assignee(s) and/or Customer(s) of J. I. Case Company and/or its Dealer(s) hereinafter referred to as Purchaser(s), in Property as hereinafter defined, *as their interests may appear.*" (Emphasis added).

The insurance company simply paid for the repairs to the tractor and Mr. Newberry refused to accept the

repairs to the tractor but insisted that he was entitled to the full value of the tractor less its salvage value which would amount to at least the balance he owed on the tractor. "Total loss" is defined in the insurance contract as follows:

> "The phrase 'TOTAL LOSS' as used in this endorsement shall apply only when the estimated cost of repair exceeds the current retail selling price of the lost or damaged machine or implement, or the original selling price of such machine, whichever is less."

The evidence was to the effect that the tires and wires were burned off the tractor and the paint was scorched. The estimated cost of repairs did not exceed the selling price, so it is obvious that under the policy definition the tractor was not a total loss as contended by Mr. Newberry.

As to partial loss the insurance contract provided:

> "(2) In the event of partial loss of or damage to such a machine or implement:

> (a) If occurring within one year from the date of Purchaser signs a NOTE OR LEASE in connection therewith,

> then this Company shall be liable for the cost of repairing or, if necessary, replacement of the damaged or destroyed part(s) of the machine or implement."

Under his first point Mr. Newberry argues that the appellee insurance company was obligated first to him, Newberry, second to appellee J. I. Case Credit Corporation and third to appellee Curtis Cruse, the repairman. We do not agree with the appellant on such priority of interest. The "Memorandum of Property Insurance" furnished to Mr. Newberry plainly states the coverage to be as follows:

> "The Purchaser, the Dealer and the Company are covered *as their respective interests may appear. . .*" (Emphasis added).

At the time of the loss Mr. Newberry had a $2,000 interest in the equipment and, of course, he had used it almost a year. The appellee J. I. Case Credit Corporation had a prior security interest in the amount of $5,665; consequently, the insurance company was obligated first to pay the cost of repairs to J. I. Case Credit Corporation.

The appellant argues that the tractor was never delivered back to him after the alleged repairs were made, and that he was given no opportunity to inspect or appraise the tractor after it was repaired. This argument is not supported by the evidence of record. On cross-examination Mr. Newberry testified that he did nothing to protect the tractor during a period of 40 days between the time of the fire and when it was picked up. He testified that he did not feel that it was his place to move the tractor or do anything with it. Mr. Newberry then testified as follows:

> "Q. When you finally had this meeting February 8th with Mr. Cruse and Mr. Felts and Mr. Britt, what do you say they wanted you to do, look at the tractor or what happened then, did they offer to show you the tractor?
>
> A. Mr. Cruse and Mr. Britt wanted to know if I wanted to see it.
>
> Q. What did you do?
>
> A. I told them I didn't care anything about looking at it, if they said it was as good as a new one, I said, I have seen it new.
>
> Q. You didn't go look at it and didn't try it out, you just said you didn't want it?
>
> A. That's right."

The appellant then calls our attention to item 16 of exhibit "C" (policy) where the policy provides:

"All adjusted claims shall be paid or made good to the Assured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of this Company. . ."

A part of Mr. Newberry's alleged damages was for delay of more than 60 days in settlement of the claim. While we agree with the chancellor that there was no proof of damage to Mr. Newberry occasioned by this delay, the claim in this case had not become an *adjusted* claim during the period complained of by the appellant. Although the present suit was commenced two days prior to the foreclosure sale, no effort was made by Mr. Newberry to enjoin the sale until his rights under the insurance contract could be determined. Mr. Newberry simply refused to accept anything less than a total loss in adjustment of the insurance claim in this case. The interest of J. I. Case Credit Corporation was far more in dollars and cents than the interest of Mr. Newberry, and the damage to the tractor and the total amount recoverable under the insurance policy could not have been more than $1,991.10, which amount was almost equal to Mr. Newberry's monetary interest but far less than the credit corporation's monetary interest. The insurance company agreed to pay the claim within 60 days after adjustment. It did not agree to accept the purchaser's claim as proof of the loss nor did it agree to negotiate "an adjustment of the loss" within 60 days, as argued by the appellant. The insurance company had nothing whatever to do with permitting the tractor in this case to be sold after the appellant instituted his lawsuit.

Under his second point the appellant argues that he does not contend the credit corporation had no right to foreclose its security interest but does contend that when the credit corporation did foreclose its security interest, it rescinded its contract with Newberry, thereby making it impossible for him to carry out his part of the contract and making it impossible for him to make an

acceptable adjustment with the insurance company. We are simply unable to follow the appellant's reasoning in this argument. Mr. Newberry contended that the tractor was a total loss. The chancellor found that it was not, and his finding is not against the preponderance of the evidence. The insurance company was only liable for the cost of repairs and it paid its obligation according to the interest of its insureds.

The decree is affirmed.